## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BB Motors Sales, LLC, | Civil No. 14cv5093 (MJD/JJK) |
| *doing business as* | |
| Luther Brookdale Chevrolet | |
| *doing business as* | |
| Luther Brookdale Buick GMC, | **REPORT AND** |
| | **RECOMMENDATION** |
| Plaintiff, | |
| | |
| v. | |
| | |
| General Motors, LLC, | |
| | |
| Defendant. | |

Charles K. Maier, Esq., and Holly A. Miller, Esq., Gray Plant Mooty & Bennett, PA, for the Plaintiff.

James C. Rock, Esq., Seyfarth Shaw LLP, Boston MA, and John Rock, Esq., Rock Law LLC, for the Defendant.

## I.  BACKGROUND

This case is before the Court, United States Magistrate Judge Jeffrey J. Keyes, on Defendant General Motors, LLC's motion to dismiss the Complaint (Doc. No. 14).  The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court recommends that Defendant's motion to dismiss the Complaint be denied in part and granted in part.

Plaintiff ("Brookdale Dealerships") operates Chevrolet, Buick, and GMC franchised motor vehicle dealerships, where it sells and services General Motors ("GM") products.  This case arises out of a dispute that Plaintiff has with GM over the labor reimbursement rate that Plaintiff should receive from GM when it performs warranty service on GM cars and trucks.  The following facts, pled in the Complaint, or embraced by it, are accepted as true for purposes of GM's motion to dismiss.

**1.     Labor Reimbursement for Warranty Repairs under Dealer Agreement.**

The Brookdale Dealerships have an identical contractual relationship with GM.  The relationship is governed by the "Dealer Sales and Service Agreement" (the "Dealer Agreement" ) ((Doc. 17) Aff. of Larry Crabtree, Ex. C) which in part provides that the Brookdale Dealerships must provide warranty service on the GM vehicles they are authorized to sell regardless of whether those vehicles were purchased from the Brookdale Dealerships.  GM reimburses its dealers for the required warranty repairs that a dealer provides including reimbursement for labor expended and parts used in making the repairs.  The Dealer Agreement states that warranty reimbursements to dealers are set forth in the GM Service Policies and Procedures Manual ("SPPM") (*Id.*, Ex. D) that is provided to the dealers.

The SPPM provides for two different options for labor rates for warranty repairs, Option A and Option C.  Under "Option A," GM reimburses dealers an

"established reasonable customer retail labour rate…which is consistent with sound business practices in the Service Agent's area." (*Id.*, Ex. D, § 1.5.1.1, p. 158.) This retail labor rate is determined by, among other things, the retail labor rate the dealer has actually been charging for its work to retail customers and by having the dealer perform a pricing survey of labor rates in the relevant market area.  The alternative to Option A is "Option C."  Option C is tied to the consumer price index and is a less time-consuming method to determine the labor rate paid to dealers like the Brookdale Dealerships.  Under Option C, there is no need for pricing surveys and the like that are required under Option A. (*Id.*, p. 159.)  Instead, according to the GM Service Policies there is an "automatic review of Service Agent warranty labour rate(s) each year, over a three-year enrollment period, based on changes in the U.S. Consumer Price Index during the preceding 12-month period, December through November." (*Id.*)  However, GM promises that under Option C its annual percentage increase for reimbursement of warranty repair labour rate would always go up by at least 2.5 percent, regardless of the CPI index.  (*Id.*)

In the past, the Brookdale Dealerships chose to be reimbursed by GM for labor warranty work under Option C.  By doing so, the Brookdale Dealerships took the risk that their labor costs might increase more than the increase in the CPI.  What the Brookdale Dealerships were promised, however, was that by choosing Option C their labor reimbursement rate would not go down.

3

According to the GM Service Policies, any dealer who chooses Option C "commits to remain in Option C for three years." (*Id.*, p. 160.)  And once enrolled in Option C, "automatic increases will follow each January 1." (*Id.*) When the three year period is nearing expiration, GM notifies the dealer that the Option C enrollment period is coming to an end.  If the dealer does not respond, then the dealer is automatically re-enrolled in Option C.  As stated in the GM Service Policies: "Re-enrollment is automatic."  (*Id.*, p. 160.)  The only other option for dealers is to opt out of Option C and enroll in Option A, which would require the pricing survey and other submissions to be completed by the dealer.

According to the Option C Policy Guidelines in the GM Service Policies: "Eligibility is contingent on Service Agent's continued compliance with GM standard parts reimbursement policy."  (*Id.*)

**2.**      **Parts Reimbursement for Warranty Repairs under Dealer Agreement.**

The agreement between GM and the Brookdale Dealerships also covers reimbursement to the dealer for parts used by the dealer in performing warranty repairs and service.  The dealer must use only genuine GM or General Motors approved parts and accessories in performing the warranty repairs.  The Service Polices set forth parts reimbursement rates that vary depending upon the age of the vehicle repaired.  For parts and accessories purchased by a dealer for vehicles manufactured in 1993 or prior model years, SPPM § 1.5.2(b) provides that "GM will reimburse Service Agent, the Service Agent price plus 30%

handling allowance for parts replaced." (*Id.*, p. 169.)  For parts purchased for vehicles built in 1994 and future model years, § 1.5.2(a) states that "GM will reimburse Service Agent the GMCCA published Service Agent net price plus the normal markup percentage allowance on all GM parts purchased from General Motors Customer Care and Aftersales." (*Id.*)  These parts reimbursement rates are referred to as "contract parts reimbursement rates" in order to distinguish them from the statutory retail rates described below.

### 3.   Statutory Reimbursement  For Warranty Repairs.

Minnesota law provides certain requirements that must be adhered to by new vehicle dealers and manufacturers, including minimum standards regarding warranty labor and parts reimbursements to dealers when they perform warranty work for the manufacturer.  Of particular relevance here is the statutory provision that sets forth the minimum rate that the manufacturer must pay the dealer for parts and labor for warranty services:

> In no event shall the schedule of compensation fail to include reasonable compensation for diagnostic work, as well as repair service, parts, and labor. Time allowances for the diagnosis and performance of warranty work and service shall be reasonable and adequate for the work to be performed. <u>The hourly labor rate paid to and the reimbursement for parts purchased by a dealer for warranty services shall not be less than the rate charged by the dealer for like service to nonwarranty customers for nonwarranty service and repairs.</u>

Minn. Stat. § 80E.04, subd. 2 (emphasis added).  This statutory rate is referred to as the "statutory retail rate" for warranty work because it reflects the rate

actually charged by the dealer to nonwarranty customers for nonwarranty services.

### 4. Brookdale Dealerships Elect To Switch to the Statutory Retail Rate for Parts Reimbursement.

Prior to June, 2014, the Brookdale Dealerships were being reimbursed for parts used in the GM warranty work at the rates set forth in the SPPM, *i.e.*, the contract parts reimbursement rate.  And, at that time, the Brookdale Dealerships were utilizing Option C for their labor rate reimbursement.  That is, they were receiving a minimum annual increase in their warranty labor rate of at least 2.5% (or more depending on increases in the CPI) regardless of the labor rate for their nonwarranty work.

On June 30, 2014, the Brookdale dealerships notified GM that they intended to seek reimbursement for warranty parts at the statutory rate set forth in the Minnesota statute quoted above.  (Crabtree Aff., Exs. E and F.)  Thus, they would get paid at the statutory retail rate (the nonwarranty customer rates for parts used in nonwarranty repairs and service) instead of the contract parts reimbursement rate set forth in the SPPM.  The Brookdale dealerships provided GM with data to support their claim for an appropriate retail rate for parts reimbursement.  (*Id.* Exs. I and J.)  GM ultimately approved a statutory parts reimbursement rate, but GM took the position that in order for the Brookdale Dealerships to obtain this statutory *parts* reimbursement rate, the dealerships could no longer operate under Option C for *labor* reimbursement rate.  Although

the Brookdale Dealerships had made no request to change its labor reimbursement rate when it requested the change in the parts reimbursement rate to the statutory rate, GM concluded that, per its interpretation of the Dealer Agreement, the Brookdale Dealerships were no longer eligible for the Option C labor reimbursement rate and they were switched to the Option A retail parts reimbursement rate.

Under Option A the labor rate is calculated on the labor rate which is actually charged to retail customers.  As a result of the switch to the Option A labor rates, the Brookdale Dealerships would no longer get the automatic annual minimum 2.5 per cent labor rate increase under Option C.  GM's position is that in order for a GM dealer to qualify for Option C labor rate reimbursement, the dealer must accept parts reimbursement at the contract rate set forth in the SPPM (*e.g.*, net price plus normal markup percentage allowance for 1994 and later model years) not at the statutory rate for parts reimbursement.

## 5.    Claims.

In the Complaint, the Brookdale Dealerships claim in Count I that GM has breached, and continues to breach, the Dealer Agreement by refusing to pay the Option C warranty labor reimbursement.  In Count II, they contend that GM has violated Minn. Stat. 80E.13(h) because it has discriminated among its new motor vehicle dealers with respect to warranty reimbursement.  They say that "GM's actions discriminate against Plaintiff with respect to warranty reimbursement by

7

not treating all of the dealers the same with respect to the amount they receive

for warranty labor reimbursement…"  (Compl. ¶ 36)

In its motion to dismiss the Complaint, GM contends that the breach of

contract claim, Count I, fails to state a claim in light of the clear and unambiguous

provisions of the Dealer Agreement, including the SPPM.  GM contends that the

Brookdale Dealerships' discrimination claim in Count II fails to meet the pleading

standards required to state a plausible cause of action.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must

"contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief is plausible if

its factual content "allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*  In applying this standard, the

court must take all of the plaintiff's factual allegations as true, and grant every

reasonable inference in favor of the plaintiff.  *See Braden v. Wal-Mart Stores,*

*Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *Knieriem v. Group Health Plan, Inc.*, 434

F.3d 1058, 1060 (8th Cir. 2006).  A party facing a motion to dismiss need not

present evidence because the inquiry is not whether the plaintiff will ultimately

succeed, but whether it has adequately asserted facts to support its claims.  *See*

*Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). This plausibility standard "requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although the court must take the plaintiff's factual allegations as true and grant all reasonable inferences in favor of the plaintiff, *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009), "legal conclusions" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" may properly be set aside. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

## 1.   Breach of Contract.

General Motors argues that the parties' contract clearly sets forth a requirement that in order to be eligible for the Option C labor rate the Brookdale dealerships must accept the payment under the pricing mechanism in the SPPM as their parts reimbursement from General Motors. ((Doc. No. 27) Reply Mem. 9) ("…the contract language is clear - - the Brookdale Dealerships' eligibility for

Option C was contingent on their continued compliance with the General Motors standard parts reimbursement policy, including acceptance of the 'normal markup percentage allowance.'" (citing SPPM §§ 1.5.1.1, p. 160 and 1.5.2, p. 169).)  Thus, says General Motors, when the Brookdale Dealerships opted to switch to the parts reimbursement pricing based on the retail rate under Minnesota statute, they could no longer utilize Option C for warranty labor rate reimbursement.  Instead they were required to accept the Option A plan for labor rate reimbursement which was based upon actual retail labor rates charged by the Brookdale Dealerships and other dealerships in the relevant market.

General Motors bases its argument that the Option C labor rate reimbursement plan was linked to the dealers' use of the contract rate for parts reimbursement on three provisions in the SPPM.  General Motors asserts that all the Court has to do is read these provisions of the parties' contract, in conjunction with entire agreement, and it will be apparent that Plaintiff cannot state a claim for breach of contract because the claim is contradicted by the express provisions of the contract.  This Court disagrees.  Each of the contractual provisions in issue are subject to differing interpretations and dismissal of the breach of contract is not appropriate at this stage.

The first contract provision in issue is § 1.5.1.1 of the SPPM, the section which sets forth the Option C Policy Guidelines.  In relevant part it says that:

> Eligibility is contingent on Service Agent's continued
> compliance with GM standard parts reimbursement policy.

With respect to reimbursement for parts, the Dealer Agreement requires the dealer to use genuine General Motors or General Motors approved parts and accessories in repairs paid for by General Motors "in accordance with the applicable provisions of the [SPPM]." (Crabtree Aff., Ex. D. at §1.5.2.)  The SPPM describes how GM will reimburse the dealer for the parts and accessories. For 1994 and future vehicle model years, "GM will reimburse Service Agent the GMCCA published Service Agent net price plus the normal markup percentage allowance on all General Motors parts…" (*Id.*)  For 1993 and prior vehicle model years, "GM will reimburse Service Agent, the Service Agent price plus 30% handling allowance for parts replaced (except tires)." (*Id.*)

General Motors says that, taken together, these provisions mean that the dealer is not eligible for the Option C labor rate if the dealer is not reimbursed for parts at the rates described in § 1.5.2, *i.e.*, net price plus the normal markup percentage on parts for 1994 and future vehicle model years and price plus 30 percent handling allowance for earlier model year vehicles.  According to General Motors, in order for the dealer to be in continued compliance with General Motors standard parts reimbursement policy, and thus be eligible for Option C labor rate reimbursement, the dealer must be reimbursed at these rates.  General Motors emphasizes that §1.5.1.1 refers to compliance with the standard parts reimbursement policy; and it argues that the only reimbursement policy in the parties' contract is this one set forth in §1.5.2.

11

Plaintiff offers a different interpretation.  It focuses on the "continued compliance" language in §1.5.1.1 of the Option C Policy Guidelines.  It notes that the official requirements of the parts reimbursement policy impose certain requirements on the dealer, such as using General Motors parts for warranty repairs, and there is no claim by General Motors that the Plaintiff was not in compliance with these affirmative obligations.  Plaintiff argues the amount to be paid for parts reimbursement is an obligation that General Motors has (*i.e.*, "General Motors <u>will</u> reimburse Service Agent…") and the standard parts reimbursement policy says nothing about the dealer being out of compliance if it exercises its right to switch to the statutory method of calculating parts reimbursement on a market rate basis.  Thus, argues Plaintiff, it was not out of compliance (and thus ineligible for Option C) with the standard parts reimbursement policy when it exercised its statutory right to opt for market rate parts reimbursement.  Moreover, Plaintiff contends that if GM is correct and its contract with the dealer allows GM to convert the dealer's enrollment in Option C to Option A for labor rate reimbursement because the dealer exercised its right to obtain the statutory parts reimbursement rate under Minn. Stat. § 80E.135, then this contract provision is null and void by virtue of Minn. Stat. § 80E.135, which prohibits the manufacturer from using "any written instrument, agreement or waiver, to attempt to nullify or modify a provision of [Chapter 80E]…."

The third contractual provision that is in issue is the part of the SPPM that guides a determination of when a warranty labor rate adjustment is necessary. With respect to Option C is says that:

2.    Option C

If it is determined, for any reason, the Option C rate was incorrectly applied, requested or approved, then the appropriate warranty labor rate adjustment will be made and implemented.

 (Crabtree Aff., Ex. D. at §1.5.1.5., p. 164.)

General Motors argues that this clearly means that once it determined that Plaintiff was no longer eligible for Option C – because Plaintiff was not in compliance with the standard parts reimbursement policy – General Motors was contractually authorized to adjust the labor rate reimbursement to Option A's retail labor rate formula.  Once Plaintiff opted for the statutory parts reimbursement rate, the Option C labor rate was necessarily "incorrectly applied, requested or approved" and the adjustment to the Option A labor rate was properly made and implemented.

Plaintiff has a different interpretation of this provision as well.  It argues that it only deals with adjustments that can be made within Option C.  It points out that there is a separate section immediately preceding this one that deals with Option A rate adjustments.  The proper interpretation, claims Plaintiff, is that when there is a determination that Option C was incorrectly applied, requested or approved, then the appropriate warranty labor rate adjustment to the Option C

rate will be made and implemented.  It does not mean that the dealer will lose Option C and be required to accept labor rate reimbursement under Option A.

As shown by laying out these provisions and the parties' arguments, there are differing interpretations of these contractual provisions, none of which are so clear and compelling that this breach of contract claim is appropriate for dismissal under Rule 12.  *Shakopee Chevrolet & Pontiac, Inc. v. General Motors Corp.*, Civ. No. 07-4632, 2008 WL 539228, at *2 (D. Minn. Feb. 27, 2008) (Davis, C.J.) (applying Michigan law and denying GM's motion to dismiss a breach of contract claim because the parties' differing interpretations of the agreement and whether the dealership met the requirements of the relevant provision was not appropriate for dismissal under Rule 12(b)(6)) ; *see also Gregory v. CitiMortgage. Inc.*, 890 F. Supp. 2d 791, 805-06 (E.D. Mich. 2012) (denying defendant's motion to dismiss breach of contract claim because contract language was ambiguous and fairly admitted to more than one interpretation); *Darcy v. CitiFinancial, Inc.*, 2011 WL 3758805, at *5-*6 (W.D. Mich. 2011) (finding plaintiff's breach of contract claim hinged on ambiguities in the contract including whether parties were "in compliance" with the terms and therefore precluded dismissal as a matter of law).  Therefore, GM's motion to dismiss Count I of the Complaint should be denied.

**2.    Discrimination Claim Under Minn. Stat. 80E.13(h).**

In Count II, the Brookdale Dealerships claim that GM has violated Minn. Stat. § 80E.13(h) because "GM's actions discriminate against [them] with respect to warranty reimbursement by not treating all of the dealers the same with respect to the amount they receive for warranty labor reimbursement." Compl., ¶ 36. This legal conclusion rests entirely upon two assertions, made on "information and belief."  First, the Brookdale Dealerships claim that, "[u]pon information and belief, GM has not converted all other Option C Minnesota GM dealers to Option A" when fulfilling their requests for retail-level warranty parts reimbursement.  Compl., ¶¶ 25, 35.  Second, they assert that "[u]pon information and belief, GM has not unilaterally assigned any other GM dealers a reimbursement rate under Option A without following the process under Option A . . . that requires certain input and information from the dealer." *Id.*, ¶ 35. Together, these two allegations amount to the generic claim that "GM treated other dealers differently."  Neither assertion is supported by even a single further factual allegation.

With regard to the charge that GM has selectively converted the Plaintiffs, but not other dealers, to Option A, the Complaint fails to identify a single dealer from whom the Brookdale Dealerships were treated differently. *See European Roasterie, Inc. v.* Dale, Civ. No. 10-53 (DWF/JJG), 2010 WL 1782239, at *5 (D. Minn. 2010). It similarly omits any substantive allegations regarding GM's

treatment of other dealers that requested retail parts reimbursement, and the ways in which it differed from GM's treatment of the Brookdale Dealerships. *See Hager v. Arkansas Dept. of Health*, 735 F.3d, 1009, 1015 (8th Cir. 2013).  The Complaint contains no details regarding the time period of GM's comparatively favorable treatment of other dealers.  With regard to the claim that GM did not follow the process set forth under Option A for determining its labor rate, the Complaint alleges no facts to describe the "process" GM was required to follow, nor to identify what aspect of the alleged "process" was not followed.  Further, the Complaint contains no allegations that suggest an omission of any part of "the process" harmed the Brookdale Dealerships by causing their labor rate to be lower than if the alleged "process" had been completed.  In other words, the Brookdale Dealerships' complaint is insufficient to put GM on notice of the events that form the grounds for the Plaintiffs' discrimination claim.

The Brookdale Dealerships' discrimination claim thus fails to measure up to the standards set forth in *Iqbal* and *Twombly*.  The conclusory allegations, based on "information and belief that GM has discriminated against them by treating other dealers differently fail to raise a right to relief above a speculative level.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  The complaint relies on the barest of "labels and conclusions," and does not contain sufficient factual matter regarding GM's alleged discrimination to state a claim for relief that is "plausible on its face."  *Iqbal*, 556 U.S. at 678; *Twombly,* 550 U.S. at 570.

In an attempt to cure the defective Complaint, the Brookdale Dealerships attempt to introduce new facts, not referenced or relied upon in the Complaint in their opposition to the motion to dismiss.  Specifically, they refer the Court to a dealer bulletin that GM distributed on January 14, 2015, after the Brookdale Dealerships initiated this lawsuit.  The Defendants are, of course, correct in their assertion that this bulletin is not properly before the Court on GM's motion to dismiss.  *Gilmore v. City of Douglas, State of Neb.*, 406 F.3d 935, 939 (8th Cir. 2005).  Moreover, the bulletin does not add anything to Plaintiff's claim that GM was discriminating between its dealers.  The relevant part of the dealer bulletin simply reminds dealers that "[a]ny Dealer that requests retail reimbursement  for parts will also receive retail reimbursement for labor pursuant to Option A of the SPPM and is therefore is ineligible for Option C labor reimbursement."  ((Doc. 25-3) Aff. of Charles Maier, Ex. N.)  It does not provide any basis for the Court to infer, as the Brookdale Dealerships request, that GM "previously allowed some dealers to both [receive" retail parts reimbursement] on Option C for labor reimbursement" because "[i]t is unlikely that GM would issue an entirely new policy based on an issue it has had with only two dealerships."  ((Doc. No. 24) Opp. Memo. at 17.)   It does nothing to rescue the purely speculative discrimination claim or raise any reasonable expectation that discovery on that claim would reveal evidence that GM discriminated against the Brookdale

Dealerships in violation of Minnesota law.  Plaintiff's discrimination claim should be dismissed.

## RECOMMENDATION

It is recommended that Defendant General Motors' motion to dismiss (Doc. No. 14) be **DENIED IN PART AND GRANTED IN PART** as follows:

1.    General Motors' motion to dismiss Count I (breach of the dealer agreement)  should be **DENIED**;

2.    General Motors' motion to dismiss Count II (violation of Minn. Stat. 80 E. 13(h)) should be **GRANTED**.

Date:  April 24, 2015

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 8, 2015,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.